## STATE OF NEBRASKA v. THOMAS P. KENNARD.

FILED OCTOBER 5, 1898. No. 10322.

Claim Against State: COMPENSATION OF AGENT. The facts in this case examined, and *held* to show that the allowance of the claim of defendant in error against the state was improper because of the fact that in the joint resolution of the legislature, under which defendant in error was employed as agent, there was an inhibition of the employment of an agent to collect the five per cent cash school fund accruing to the state.

ERROR from the district court of Lancaster county. Tried below before CORNISH, J. *Reversed.*

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

*Tibbets Bros., Morey & Ferris* and *Talbot & Allen, contra.*

RYAN, C.

This action was begun in the district court of Lancaster county under the sanction of a resolution of the house of representatives of the legislature of 1895 permitting the institution of such a suit against the state, and there was a judgment for the sum of $13,521.99, for the reversal of which these proceedings are prosecuted by the judgment defendant. There were several matters urged by way of defense in the district court, but the view which we take of the case dispenses with a consideration of other questions than those which shall now receive attention.

On February 8, 1873, there was approved the following joint resolution, which had been adopted by the legislature then in session, to-wit:

"*Be it enacted by the Legislature of the State of Nebraska:*

"That the governor be, and he hereby is, authorized and empowered to appoint an agent or agents in behalf of this state to prosecute to final decision before congress, or in the courts, the claim of this state for the five per cent due to the same from the United States upon the land of this state disposed of by Indian reservations and by the location of military land warrants and land scrip issued for military service in the wars of the United States and for agricultural college scrip and railroad lands; and

"WHEREAS, The government of the United States has allowed various states large amounts of swamp and overflowed lands lying within their borders; and

"WHEREAS, No such allowance of swamp and overflowed land has ever been received by this state for the large area of land lying within its limits subject to overflow: Now, therefore,

"*Be it resolved by the Senate and House of Representatives of the State of Nebraska,* That the governor is hereby authorized and empowered to appoint a competent and reliable agent or agents as provided by section one of this act, and that said agent or agents shall receive such compensation from said lands or money as may be agreed upon by said agent or agents and the governor conditioned that the state shall be put to no expense whatever unless said agent or agents shall be successful in whole or in part in securing the aforementioned claims: Provided that the foregoing shall in nowise apply to the five per cent cash school fund accruing to the state." (General Statutes 1873, p. 869, ch. 59.)

On October 15, 1874, Robert W. Furnas, as governor of Nebraska, entered into a written agreement with Thomas P. Kennard by the terms of which the latter was to receive fifty per cent of the amount to be collected by him as agent for the state of Nebraska under the terms of the joint resolution above set out. In his petition in the district court Mr. Kennard alleged that he had prosecuted the claims of the state of Nebraska for five per centum due to the state of Nebraska on account of Indian reservation lands, and in the said prosecution he had expended large sums of money, and, to quote his own language used in said petition, that he, "as a result of such prosecution, obtained from the department of the interior, one of the executive departments of the United States government, a decision on the 14th day of January, 1881, whereby the state of Nebraska was authorized to receive five per cent of the proceeds of all sales of lands upon what was known as the Pawnee Indian reservation within the borders and limits of the state of Nebraska, and by such decision of the said department the state of Nebraska was awarded five per centum of said sales." This action was for one-

State v. Kennard.

half of the net amount which had been received by said state from the sales of land in the Pawnee Indian reservation.

The enabling act by virtue of which Nebraska became a state contained the following provisions: "Sec. 12. And be it further enacted, that five per centum of the proceeds of the sale of all public lands lying within said state, which have been or shall be sold by the United States prior or subsequent to the admission of said state into the Union, after deducting all expenses incident to the same, shall be paid to said state for the support of common schools." (13 U. S. Statutes at Large, p. 49.) The five per cent cash school fund accruing to the state, mentioned in the proviso with which the joint resolution closed, it is claimed by the attorney general, is the five per cent contemplated by section 12 of the enabling act, and, therefore, that no compensation was earned for collecting this because of the terms of said proviso expressly denying the right of compensation for such collection. On behalf of the defendant in error it is contended that the misapprehension which vitiates this argument of the attorney general is that the term "public lands" was not applicable to an Indian reservation. To sustain this view the defendant in error insists that the supreme court of the United States, in *Newhall v. Sawyer*, 92 U. S. 763, defined the expression "public lands" in the following language: "The words 'public lands' are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws." The deductions which counsel for defendant in error make from these premises will probably be most correctly stated by quoting from the brief submitted by them this language: "The lands within the Pawnee reservation were never subject to sale or other disposal under general laws, and when they were finally sold it was under the provision of a special act of congress approved April 10, 1876, entitled 'An act to authorize the sale of the Pawnee Reservation.' (See U. S. Statutes at

Large, vol. 19, p. 28, ch. 51.) This act provided that these lands should be advertised for a certain time in papers in local cities and should be sold at public auction. Had these been 'public lands,' they would have been subject to entry under the homestead and pre-emption laws, and would not have been sold at public auction. If, therefore, they were not 'public lands,' then the state of Nebraska had no claim upon them or their proceeds by virtue of section 12 of the enabling act."

We confess that this course of reasoning does not impress us as being sound or convincing. If we apprehend the propositions implied or embodied in the above language, they are, first, that these lands were not public lands, for if they had been they would have been subject to entry under the homestead and pre-emption laws; second, that the fact that they were sold at public auction after advertisement shows they were disposed of under a special act of congress, and, consequently, third, it is inferred that they were not "subject to sale or other disposal under general laws." As to the inference just stated, it is sufficient to say that the mere fact that congress, by a special act, prescribed how these lands should be sold does not justify the inference that they could not have been sold in any other manner. Counsel for defendant in error have not in their brief or argument cited any authority or statutory provision which tends to sustain the general proposition above laid down that the lands within the Pawnee reservation were never subject to sale or other disposal under general laws, and we cannot accept this unsupported statement as correct. In the letter of the commissioner of the United States land office, addressed to Mr. Kennard, of date January 14, 1881, referred to in the petition, and which Mr. Kennard offered in evidence, the right of the state of Nebraska to an accounting was recognized under the provisions of section 12 of the enabling act, because of the fact that the lands sold were public lands. Counsel for the defendant in error, however, in their brief, repudiate this

State v. Kennard.

theory and state the right to compensation as follows: "The facts may be stated thus: The state claimed that the five per cent provision in the enabling act gave it some kind of a claim against these reservation lands. The United States denied it. The state employed Mr. Kennard to convince the United States that it was wrong. Mr. Kennard succeeded in doing so, and recovered over $27,000. The state accepted the money, but the attorney general would now refuse Mr. Kennard any compensation on the ground that the money belonged to the state all the while." If we understand this language, we are asked to infer that the claim prosecuted by Mr. Kennard was not one on which the state was entitled to recover payment, but that Mr. Kennard made a showing so plausible that it was paid; therefore, he should recover half of that payment. Mr. Kennard is prosecuting this action to enforce the payment of his claim as a matter of strict right under his contract. With considerations of what the state should do, independently of its contract obligations, we have no concern. If Mr. Kennard has obtained the allowance and payment to the state of that to which the state was not entitled, the legislature must determine how his services should be recognized. Upon the record and evidence submitted for our consideration we see no room for doubt that to enforce the claim of Mr. Kennard to a division of the five per cent of the proceeds of sales of lands constituting the Pawnee Indian reservation would be in contravention of the proviso of the joint resolution by which it was declared that the employment of a collecting agent should in nowise apply to the five per cent cash school fund accruing to the state. The judgment of the district court is, therefore, reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

REVERSED AND REMANDED.