State v. Kennard.

## STATE OF NEBRASKA V. THOMAS P. KENNARD.

FILED FEBRUARY 9, 1899.   No. 10322.

1. **Public Lands.** At the time of the admission into the Union of the state of Nebraska the lands therein occupied in common by the Pawnee Indians, and known as the "Pawnee Indian Reservation," were public lands within the meaning of section 12 of the act of congress known as the enabling act. (13 U. S. Statutes at Large 47.)

2. ———: TITLE. The fee simple title to said lands at said time was in the United States, incumbered only with the right of said Indians to occupy the same.

3. ———: SALE: APPLICATION OF PROCEEDS. By section 12 of said enabling act congress granted to the state of Nebraska five per cent of the proceeds arising from the sale of said lands, which took effect upon the extinguishment of the Indians' right of occupancy and the sale of the lands by the United States.

4. **Claims Against State: COMPENSATION OF AGENT.** *State v. Kennard,* 56 Neb. 254, reaffirmed.

REHEARING of case reported in 56 Neb. 254. *Judgment below reversed.*

*C. J. Smyth, Attorney General,* and *W. D. Oldham, Deputy Attorney General,* for the state.

*Tibbets Bros., Morey & Ferris,* and *Talbot & Allen, contra:*

The lands were not public. (*Leavenworth, L. & G. R. Co. v. United States,* 92 U. S. 733; *Wilcox v. Jackson,* 13 Pet. [U. S.] 498; *Cherokee Nation v. Georgia,* 5 Pet. [U. S.] 1; *United States v. Cook,* 19 Wall. [U. S.] 591; *State v. Delesdenier,* 7 Tex. 76; *Spaulding v. Martin,* 11 Wis. 274; *Buttz v. Northern P. R. Co.,* 119 U. S. 63; *United States v. Forty-three Gallons Whiskey,* 93 U. S. 188; *Polk v. Wendall,* 9 Cranch [U. S.] 87; *Vincennes University v. Indiana,* 14 How. [U. S.] 268; *United States v. Payne,* 2 McCrary [U. S.] 289; *Dubuque & S. C. R. Co. v. Des Moines V. R. Co.,* 109 U. S. 329.)

RAGAN, C.

This is a rehearing of *State v. Kennard*, 56 Neb. 254. By section 12 of the enabling act passed by congress April 19, 1864 (13 U. S. Statutes at Large 47), the United States donated to the state of Nebraska five per centum of the proceeds of sales of all public lands lying within the state of Nebraska which had prior to that time been sold, or which should subsequently be sold, by the United States, after deducting expenses incident to such sale. At the time the state was admitted into the Union a tribe of Indians known as the "Pawnees" occupied in common a tract of lands in this state known as the "Pawnee Indian Reservation." After the state was admitted into the Union the United States took such steps as resulted in the extinguishment of the rights of these Indians to the lands in this reservation, sold the lands, and, it seems, used the proceeds of the sale to defray the expenses incident thereto in procuring other lands for the Indians elsewhere, and placed the remaining proceeds of the sale of these lands in the United States treasury to the credit of the Indians. By an act passed by the legislature of the state of Nebraska in February, 1873 (see General Statutes 1873, ch. 59), it seems that the legislature was of opinion that by reason of section 12 of the enabling act the United States was indebted to it for five per cent of the value of the lands lying within the state used as Indian reservations, and five per cent of the value of all lands on which private parties had located military land warrants and land scrip issued for military service in the wars of the United States, and five per cent of the value of all such as had been donated by the United States to railroads. It is also recited in said act that the United States had donated to other states swamp and overflowed lands lying within their borders, but that no such donation or allowance of swamp and overflowed lands had been made to this state, and it seems to have been the opinion of the legislature that all the swamp

and overflowed lands lying within the state belonging
to the United States should by it be donated to the state.
The act under consideration authorized the governor to
employ an agent, in behalf of the state, to prosecute to
final decision before congress or in the courts the claim
of the state of Nebraska against the United States for
the five per cent of the value of the lands disposed of by
the United States for any of the purposes already men-
tioned and for the purpose of procuring from the United
States a donation of the swamp and overflowed lands
within its borders.   The act left the compensation of the
agent to be agreed upon by the governor and the agent,
but provided, in effect, that the agent should not be en-
titled to any compensation for collecting from the
United States any part of the five per cent cash school
fund which had been donated to the state by the United
States by section 12 of the enabling act aforesaid.   The
governor of the state entered into a contract with Ken-
nard in pursuance of the act of the legislature just men-
tioned, in and by which he authorized Kennard to prose-
cute and collect the claims of the state against the nation
in conformity with the act of the legislature, and that
the state should pay him one-half of all moneys, except
such cash school fund, he should collect for the state as
such agent.   Mr. Kennard entered upon the performance
of his contract with the governor, and by his efforts in-
duced the secretary of the interior to acknowledge that
the United States were indebted to the state of Nebraska
in the sum of five per centum of the proceeds of the sale
of the "Pawnee Indian Reservation" lands made by the
United States subsequent to the admission of the state
into the Union; and in pursuance of this decision of the
secretary of the interior the United States paid into the
treasury of this state $27,000.   Mr. Kennard, by permis-
sion of the legislature, then brought this suit to recover
one-half of that sum.   He had judgment in the district
court for Lancaster county and the state brought the
same here for review, and the judgment of the district

court was reversed. We based our judgment of reversal of this judgment upon the proposition that the lands of the "Pawnee Indian Reservation" were public lands within the meaning of section 12 of the enabling act, and that the only money collected by Mr. Kennard was the five per cent of the proceeds of the sale made of these lands by the United States, and by the terms of his contract he was not to have any compensation for collecting these moneys. Counsel for Mr. Kennard so strenuously insisted that we were wrong in this conclusion that we granted a rehearing. We have again examined the question, with the result that we adhere to our former conclusion.

In 1873 the Great and Little Osage Indian tribes occupied certain lands in common in the state of Kansas. The lands occupied by them were known as Indian reservations. In that year congress passed an act (see 12 U. S. Statutes at Large 772) in and by which it granted to the state of Kansas, to enable a railroad to be constructed between certain points, each alternate section of land, designated by odd numbers, for ten sections in width on each side of said railroad as it should be located. The legislature of the state of Kansas accepted this grant and designated the Leavenworth, Lawrence & Galveston Railroad Company to construct the road and receive the grant of land. The railroad company constructed the road and received from the state of Kansas patents for the alternate sections of this land within these Indian reservations. The United States then brought ejectment against the railway company for the lands lying within the Indian reservations which had been conveyed to the railroad company by the state of Kansas, and the supreme court, by a divided opinion, held that the act of congress granting to the state of Kansas the alternate sections of land within ten sections of this railroad did not vest the state of Kansas with any lands within the Indian reservation. It was conceded that the fee simple title to the Indian reservation lands was in the United

States and that the only title of the Indian was the right to occupy, and because the United States were not invested with possession and the right to possession as well as the fee the court held that the grant did not embrace the lands within the reservations. The principle upon which the case was decided was that all grants are to be strictly construed against the grantee; that nothing passes except what is conveyed in clear and explicit language; and that, strictly construing the act of congress, it would not be held that the United States intended to convey what it did not own, namely, both title and seisin. (*Leavenworth, L. & G. R. Co. v. United States*, 92 U. S. 753.) This conclusion of the court was reached notwithstanding the fact that on the same day the act donating these lands to the state of Kansas passed another act of congress went into effect authorizing the president, by treaty or otherwise, to extinguish the rights of these Osage Indians to the lands in their reservation, and that subsequently the title of these Indians to these lands was extinguished, the lands put upon the market and sold by the United States, and the proceeds placed in the United States treasury to the credit of the Indians. In 1864 certain tribes or bands of Sioux Indians occupied in common certain lands in what was then known as Dakota territory, and by an act of congress passed in July of that year (13 U. S. Statutes at Large 365) congress granted to the Northern Pacific Railway Company each alternate section of public lands, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of its line of railway as the same was to be constructed between Lake Superior and Puget Sound. The railroad, as constructed, passed through the lands occupied by these Sioux Indians, and it claimed that the act of congress vested in it the title to these alternate sections of land lying within these Sioux reservations. On the other hand, it was contended that at the time the grant to the Northern Pacific went into effect the United States were not in possession of both the fee title

and the possession and right to possession of these Indian
lands; that the grant should be strictly·construed, and
that the act could not be interpreted to mean that the
United States granted the railroad company what it did
not own, and the case in 92 U. S. just referred to was
relied upon to support that contention. But the national
supreme court held that by the act of congress the United
States donated to the railroad company all the right and
title which.it, the United States, had in those lands.
(*Buttz v. Northern P. R. Co.*, 119 U. S. 55.) This Northern
Pacific railroad case virtually overruled the case in 92
U. S. The doctrine then of the supreme court of the
United States is that all Indian lands, all lands occupied
in common by the Indians, whether these lands be reser-
vations or not, are public lands, the fee simple title to
which is in the United States; that the Indian is but the
ward of the nation, and his only interest or title to the
lands of which he is in possession is the right to occupy.
We think, therefore, that when Nebraska was admitted
into the Union the lands of the "Pawnee Indian Reserva-
tion" were public lands, the fee simple title was in the
United States, and the Indians had only the right of. oc-
cupancy in those lands, and that an absolute grant by
congress to the state of all public lands within her bor-
ders would have invested the state with the title to the
lands of the "Pawnee Indian Reservation," incumbered
only with the Indians' rights of occupancy. The United
States then, by paying into the state treasury, at the
request and solicitation of Mr. Kennard, of five per cent
of the sale of these Indian reservation lands, were simply
performing the grant made by the nation to the state by
section 12 of the enabling act, as by the grant the United
States promised to pay to the state not only five per cent
of the proceeds of all public lands lying within the state
and.which had prior to that time been sold by the United
States, but also to pay to the state five per cent of the
proceeds of all public lands lying within the state which
might after the date of the grant be sold by the United

States. The fact that the United States sold these lands and put the money to the credit of the Pawnee Indians is not a consideration of any importance in determining whether these "Pawnee Indian Reservation" lands were public lands within the meaning of the enabling act. The thing of controlling importance is that the fee simple title to these lands was in the United States. They were, therefore, public lands, and the promise was that when sold by the owner it would pay five per cent of the proceeds of the sale to the state. What the United States did with the money derived from the sale of those lands is unimportant. The judgment of the district court is

REVERSED.